## WALLACE FRANKS v. THE STATE.

### No. 3117.   Decided March 1, 1905.

**1.—Murder in Second Degree—Jury And Jury Law—Challenge—Prejudice.**

Where in a trial for murder, a juror was in all respects qualified, but had made the remark, "there goes another plea of insanity," when told about the homicide, and the plea of insanity was not interposed, there was no error in overruling the challenge for a cause, defendant's counsel having announced before such ruling that he would not interpose said plea, and although the juror stated on his voire dire that he had prejudice against the crime of murder.

**2.—Same—Charge of Court—Renewing and Provoking Difficulty—Confusing Charges.**

Where in a prosecution for murder, the evidence showed that after the first altercation between the defendant and deceased, they separated, and shortly afterwards defendant followed deceased with a pistol and another altercation ensued between them which resulted in the homicide, the evidence further showing that defendant contended that deceased had taken his money which he attempted to regain, etc., it was error to charge in effect that if defendant armed himself and followed deceased with the intention of renewing the difficulty and shot and killed him, he would be guilty of some grade of voluntary homicide, no matter what occurred when he came up with deceased, and without charging that he must do some act or bring on the difficulty: and this although special instructions were given to the contrary, as these were only calculated to confuse.   Brooks, Judge, dissenting.

**3.—Same—Charge Refused—Manslaughter—Wager—Robbery.**

Where the evidence, in a trial for murder, showed that defendant followed deceased and shot him; there was no error in refusing an instruction that if defendant went to where deceased was, etc., and deceased attacked him with a knife, etc., to convict of manslaughter; or that if they believed deceased had robbed defendant, the latter had a right to kill the former, the evidence showing that deceased had taken the money put up as a wager from the stakeholder, defendant claiming he had won it, etc.

**4.—Same—Cooling Time—Condition of Mind not an Issue.**

Cooling time is a question of fact in a case of homicide, where the issue is in the case, to be submitted to the jury as a question of fact on time for cooling, and not upon the condition of the defendant's mind at the time of the homicide.

**5.—Same—Charge of Court—Sufficient Cooling Time the Issue.**

A charge of the court in a trial for murder—where the evidence showed that there had been a previous difficulty between defendant and deceased; that they had separated, and some little time thereafter the difficulty was renewed by defendant—that if defendant renewed the difficulty and killed deceased, after sufficient cooling time from the original altercation, etc., the homicide would not be reduced from murder to manslaughter was correct.   Qualifying Jones v. State, 33 Texas Crim. Rep., 492; Eanes v. State, 10 Texas Crim. App., 421; Halliburton v. State, 32 Texas Crim. Rep., 51.   Distinguishing Orman v. State, 24 Texas Crim. App., 495; Wadlington v. State, 19 Texas Crim. App., 266.   Approving, Surrell v. State, 29 Texas Crim. App., 321.   Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Falls.   Tried below before Hon. Sam R. Scott.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Tom Connolly* and *Rice & Bartlett,* for appellant.—On trial for murder in which the issue of manslaughter is involved, the important question is the actual condition of the mind of the defendant at the time of the homicide; and whether the mind be cool or otherwise is a question of fact, not of law, and it was error for the court to charge the jury in effect, that if a sufficient length of time had elapsed for the mind to cool then, as a matter of law it must be cool, thus withdrawing the issue of manslaughter from the jury. Jones v. State, 33 Texas Crim. Rep., 492; Eanes v. State, 10 Texas Crim. App., 421; Halliburton v. State, 32 Texas Crim. Rep., 51.

The court erred in giving the State's special charge No. 1, requested by counsel for the State upon the limitation of defendant's right to arm himself and follow deceased with intention of renewing and provoking the difficulty with the deceased and that thereafter shot and killed the deceased he would not be justified in so doing; first, because said charge assumes two separate and distinct difficulties; and second, because if defendant renewed a difficulty or provoked the same without intention of doing serious bodily harm to the defendant and only for the purpose of demanding his money he would be guilty of no offense; and third, because said charge in effect negatives defendant's right to resist an attack which imperiled his life or inspired him with the reasonable belief of suffering serious bodily injury at the hands of the deceased if he provoked or renewed the difficulty no matter what his purpose or object may have been in so doing. Walters v. State, 35 S. W. Rep., 652; Airhart v. State, 40 Texas Crim. Rep., 470; Dodd v. State, 68 S. W. Rep., 992.

The court erred in refusing to give defendant's special charge No. 3 on the subject of manslaughter, the same being peculiarly applicable to the facts in evidence and neither the main charge nor any special charge given upon this subject embraced the idea or phase of the case presented by such refused charge. Williams v. State, 24 Texas Crim. App., 637; McLaughlin v. State, 10 Texas Crim. App., 340; Cochran v. State, 28 Texas Crim. App., 422; Wadlington v. State, 19 Texas Crim. App., 266; Williams v. State, 15 Texas Crim. App., 617.

Upon the question of "cooling time" as raised under appellant's second assignment of errors, we beg to call the attention of the court to our statute upon the subject of manslaughter. The court undertakes to differentiate the case at bar from the Eans, Halliburton and Jones cases referred to in the opinion by saying that those were cases in which the adequate cause were insulting words or conduct on the part of the deceased towards a female relative of the defendant. Our statute, article 705, Penal Code, uses this language: "The jury shall be at liberty to determine in every case whether under all the circumstances whether the insulting words or gestures was the real cause which provoked the killing." And again, article 707, Penal Code, "In order to reduce a voluntary homicide to the grade of manslaughter it is necessary not only that

adequate cause existed to produce the state of mind referred to but also that such state of mind did actually exist at the time of the commission of the offense"; thus showing that notwithstanding the fact that insults may have been given to a female relative and that the killing occurred on the first meeting thereafter, still the jury are at liberty and it is their duty under a proper charge to determine the actual condition of the mind at the time of homicide, and if from the evidence the killing can be referred to any other motive than that of the insult then it would not be manslaughter. . Thus allowing the jury to determine as a question of fact under the evidence whether the killing was the result of the passion aroused by adequate cause to wit: the insult. So, in the present case the jury ought to have been allowed under appropriate instruction to have determined whether or not the defendant acted in malice or whether from the adequate cause mentioned his mind was incapable of cool reflection at the time of the homicide. The actual condition of the mind it seems to us was the subject of inquiry and time was not the essence of this issue. We all know that some minds will cool under the same provocation sooner than others. One man under the same provocation may become cool and quiet in an hour or within a few minutes, so much so as to enable him to contemplate the consequences of the act, while another might not for several hours become so cool. It seems to us that the illustrations given by the court are extreme cases and in such a case the killing could not be referable to the former provocation; but in the present case only a few minutes elapsed between the first difficulty and the second, and the record shows that in the first altercation insulting words and epithets together with an attempted assault upon the defendant by the deceased was made with a deadly weapon, and at the same time was in the very act of carrying away of defendant's money; all of which facts are abundantly sufficient upon which to predicate the adequate cause under our statute which would reduce the killing to manslaughter. Certainly under the circumstances and conditions surrounding the defendant the interval of time between the first and second difficulty ought not to be the test alone but the actual condition of defendant's mind. The court suggests that the jury in all these cases ought to have the right to determine whether or not a reasonable man would probably become cool in the time intervening between the first and second difficulty and if a reasonable man should in the opinion of the jury become cool under the circumstances then in the language of the court he is cool; but if we grant this contention, to which we cannot assent, then in this case radical error has been committed on account of the failure of the court to give any instruction to the jury upon this phase of the case. There is no charge wherein the jury are told that they should consider whether under all the circumstances of the case that a reasonable man if laboring under such mental excitement produced by an adequate cause would likely have become cool between the first and second difficulties then they should find that

the defendant had in fact become cool and if on the other hand a reasonable man under the same circumstances would not have become cool then that they could not convict the defendant of no higher grade of offense than manslaughter. It will be no answer to this proposition to say that no such charge was requested because it is the duty of the court in a felony case whether requested or not to charge every phase of the case applicable to and raised by the evidence. On the subject of cooling time the court's charge was specially excepted to. We respectfully submit that the judgment of the court affirming this case should be reconsidered and the case reversed and remanded.

*Howard Martin,* Assistant Attorney-General for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, the penalty assessed being confinement in the penitentiary for a term of twenty-five years.

The first bill of exceptions shows that in the formation of the jury William Eggerton was summoned as a talesman and afterwards sat upon the trial. Upon his voir dire examination he was asked whether he had formed or expressed an opinion relative to the guilt or inocence of the defendant. He answered that at the time of the killing of young Galloway, by defendant, he said to the person who told him about it, "There goes another plea of insanity." The juror further stated he had no prejudice against defendant but like all good citizens he had a prejudice against the crime of murder. The juror in all other respects qualified. Whereupon defendant at this time had exhausted all of his peremptory challenges, and challenged said juror for cause. The court thereupon inquired of counsel whether the defense would involve the question of insanity, and being answered in the negative, the court overruled said challenge for cause, and had said juror sworn. We do not think there was any error in the ruling of the court. The mere fact that a juror has a prejudice against the crime of murder would not disqualify him; nor can we see how it would injure the rights of the defendant if he had a prejudice against the plea of insanity, when the defendant made no such plea.

Complaint is made by appellant of the following charge given by the court at the request of the county attorney: "If you find from the evidence that, prior to the shooting, deceased, without defendant's consent, seized money that was defendant's property, or that defendant fairly and reasonably believed was his property, and that deceased refused to give up such money, and that deceased and defendant had a difficulty over said money, then, if you believe that they separated and that thereafter defendant followed deceased up the road, then, if you believe that defendant in following deceased did so, not for the purpose of renewing or provoking a difficulty with deceased, but with an honest intention to demand of deceased the return of the money which defendant honestly

believed that deceased had wrongfully taken from him, and the deceased in refusing to comply with such demand, was about to make an unlawful attack upon defendant with a knife of such a nature as to inspire defendant with the reasonable belief that he was in danger of serious bodily injury or death from such attack, and that acting on such belief defendant fired the fatal shot, he would be justified in so doing. On the other hand, you are charged that, where the possession of personal property has once been lost, the owner has no lawful right to regain it by such means as result in a homicide. So, in this case, if you believe that prior to the shooting the deceased, without the defendant's consent seized money that was defendant's property, or that defendant fairly and reasonably believed was his property, and that deceased refused to give up such money, and that defendant and deceased had a difficulty on account thereof, and that after they separated you believe beyond a reasonable doubt that defendant armed himself and followed deceased up the road, and you further believe from the evidence beyond a reasonable doubt that defendant so armed himself and followed deceased with the intention of renewing or provoking a difficulty with deceased, and that thereafter he shot and killed deceased, but if done upon express malice, as defined in the charge he would be guilty of murder in the first degree, and if upon implied malice as defined, would be guilty of murder in the second degree; and if done upon the immediate influence of sudden passion, aroused by an adequate cause, as defined in the charge, he would be guilty of manslaughter." Appellant excepted to said charge, because if defendant renewed the difficulty or provoked the same without the intention of doing serious bodily harm to deceased, and only for the purpose of demanding his money, he would be guilty of no offense; and because said charge, in effect, negatived defendant's right to resist an attack, which imperiled his life or inspired him with a reasonable belief of suffering serious bodily injury at the hands of deceased if he provoked or renewed the difficulty, no matter what his purpose or object may have been in so doing. We do not think the charge is erroneous. The words "renew and provoke the difficulty" here used in the charge are synonymous terms, and as we understand the law, is an apt presentation of the same to the facts of this case. The substance of the evidence shows, that appellant and deceased made a wager of a dollar each that appellant could not throw a certain anvil over his head. They placed the money in the hands of a bystander and appellant picked up the anvil and threw it over his head. Deceased immediately grabbed all the money out of the bystander's hand—at least appellant thought so; but the evidence rather indicates that one of the dollars fell upon the floor and deceased did not get it. However, knowledge of this does not appear to have been brought home to appellant. Thereupon a heated controversy or colloquy ensued between appellant and deceased as to the possession of the money: appellant insisting that he had won the money fairly, deceased insisting that he had not and refus-

ing to give it up. Appellant picked up a hammer, deceased drew his knife, and in this posture passed out of the blacksmith shop. Thereupon appellant picked up a piece of iron in a manner indicating he would throw it at deceased. The bystander stepped aside. However, appellant did not throw. Deceased and appellant continued to abuse each other. Appellant went off to his boarding-house, deceased and companion started home. Appellant secured a pistol, came back, hunted deceased and discovering that he had started home, ran after and followed him something like 250 yards, halloaing to deceased to stop, which he did. Appellant demanded the money of deceased, which he refused to give up. Appellant, at this juncture drew his pistol, deceased started to run; appellant fired two bullets into his back as he ran off, and deceased fell and died instantly. Appellant testified that deceased opened his knife and made a gesture or demonstration as though to stab him with it, and that he fired immediately upon this demonstration being made. Without repeating in detail, this is the substance of the testimony as gleaned from the record.

Appellant asked that the court give the jury the following instruction, which was refused to wit: "If you believe from the evidence that shortly before the killing defendant had won a dollar from deceased, which deceased refused to deliver, and which he suddenly snatched from the hands of the stake-holder, whereupon a quarrel ensued between deceased and defendant, and in which deceased drew a knife upon defendant, and threatened to kill him, and immediately thereafter defendant went to where deceased was and again demanded possession of said dollar and deceased again refused to give it to defendant, but began to curse and abuse defendant and to make a demonstration upon defendant as though to draw a knife, and you believe that such facts, acts and circumstances taken together, did arouse in the mind of the defendant such a degree of anger, rage, resentment or terror as to render his mind incapable of cool reflection, and while in such condition he shot and killed the deceased, you are charged that he could not be convicted of any offense higher than the grade of manslaughter." We do not think this charge was called for by the facts, since the evidence does not show that immediately thereafter defendant went to where deceased was, but on the contrary the evidence shows that they separated, defendant going to his boarding-house, secured his pistol and sometime thereafter followed deceased some distance up the road towards deceased's house, and there shot and killed him. Appellant also asked the court to charge on the right of appellant to kill deceased if deceased had robbed appellant. We do not think this charge should have been given, under the evidence.

Appellant also excepted to the following portion of the court's charge: "You are charged, in this connection, that if you believe from the evidence that prior to the homicide, if any, defendant Franks and deceased Galloway had been engaged in an altercation of words and threatening gestures, and that there was thereby created in the mind of the defendant

Franks such a degree of anger, rage, sudden resentment or terror, as to render the defendant, Franks, incapable of cool reflection; and you find that there was a cessation of said difficulty, if any, and that thereafter defendant Franks renewed the difficulty and killed deceased Galloway with said pistol, if he did; and you further find that such renewal of the said altercation, if any, was after sufficient cooling time from the original altercation, if any, that is, if there was sufficient time for such anger, rage, sudden resentment or terror of the defendant Franks, if any, to subside, and for his reason to interpose to such an extent as to comprehend the consequences of the act about to be committed, if any, then the homicide would not be manslaughter; and in passing upon this question the jury should consider all the facts." Appellant excepted to this charge on the ground, "that it was not demanded by the facts in evidence; that there was only a few moments between what the court termed the first and second difficulties, the facts showing that the same was one continuous difficulty or trouble, without cessation in fact; and because said charge fails to give a definition of cooling time, and left the jury without a rule in reference thereto; and because upon the subject of cooling time said charge did not require the jury to find as a fact that defendant's mind had in fact become cooled to such an extent as to comprehend the consequences of his act; but the court instructed the jury, as a matter of law, that if sufficient time had elapsed for such anger, rage, sudden resentment or terror to subside, and for reason to interpose to such an extent as to enable him to comprehend the consequences of the act about to be committed, then the homicide would not be manslaughter. Thus withdrawing the issue of manslaughter from the jury, and in effect directing the jury to find against defendant on the issue of manslaughter, even if defendant's mind had not in fact cooled." The evidence, as stated above, shows that there had been a previous difficulty. The parties separated and some little time thereafter the difficulty was renewed. Clearly, this presents the issue of cooling time. We think the charge of the court is correct. It follows the charge approved by this court in Surrell v. State, 29 Texas Crim. App., 321. However, appellant cites, to support his contention, the cases of Jones v. State, 33 Texas Crim. Rep., 492; Eanes v. State, 10 Texas Crim. App., 421; Halliburton v. State, 32 Texas Crim. Rep., 51. In each of the last cases cited, the issue of cooling time was not in law involved, since the defense alleged in each was insult to female relative. The statute authorizes reduction of the homicide to manslaughter in such case, regardless of the length of time elapsing between the act or information in reference to the insult, if as a matter of fact the deceased's mind was not cool. Hence said issue of cooling time is out of those cases. In Orman v. State, 24 Texas Crim. App., 495, the defense of insult to female relative was also involved. There Judge Willson, delivering the opinion of the court, held that the issue of cooling time was not involved where the defense is insult to female relative. We take it, that a

careful inspection of the statute will demonstrate this fact, since the Legislature in the passage thereof, directly laid down another basis than the ordinary causes for manslaughter. In Wadlington v. State, 19 Texas Crim. App., 266, it was held: "However great the provocation may have been, if there be sufficient time for the passion to subside, and for reason to intervene, the homicide will be murder." In this case the proof shows that after deceased was made to release hold of defendant, some two or three minutes elapsed before defendant fired. The court held that the issue of cooling time should have been charged in connection with the issue of manslaughter. In Jones v. State, supra, the court very properly say, "that cooling time is not a matter of law but a matter of fact," but very improperly, as we take it, after a careful review of the authorities, hold that the charge given by the court was erroneous; and further erred in holding, "that it is not so much a question of time in which the mind may become cool, and sedate, as it is one of the actual conditions of the mind at the time the homicide occurred." It is further stated, "that the law has not undertaken to prescribe the time in which the mind may become cool, passing from a disturbed or enraged condition, nor can it well do so. It must depend upon testimony, not law." It is further stated that "If at the time of the homicide, the mind of the slayer be cool and deliberate his crime would be murder in the first degree. If on the other hand it was aroused to sudden passion to the point of being beyond cool reflection, brought about by an adequate cause, the killing would usually be of no higher grade than manslaughter. Whether the mind be cool or otherwise is a question of fact, not of law, and relates to the actual condition of the mind and not to his status merely from a lapse of time." This case is supported by the Eans and Halliburton cases, supra; but neither of them, as we take it, announce the correct proposition of law. We agree with said cases that cooling time is a question of fact, but it is the time that is the fact to be ascertained, not the condition of the defendant's mind. If defendant's mind is the fact to be ascertained, then cooling time has nothing to do with the question. Suppose a quarrel occurs between A and B, a year passes and A meets B to-day and shoots and kills him. It is doubtful whether the issue of cooling time could be in the case, or whether the issue of manslaughter could possibly be suggested by these facts alone. Then the only connection between the previous difficulty and the final one is the fact that brings the issue of cooling time into the case. Then, it becomes a question of fact as to how long a time, or whether sufficient length of time for an ordinary man to cool, has elapsed. This is not a question of law, but a question of fact. If sufficient time has elapsed between the first and second colloquy for a reasonable rational creature to cool, then the law presumes that he has cooled. He may not be cool, but he can not insist upon manslaughter from the fact that he has such a disordered mind that it cannot cool in a reasonable time. The law

judges defendant by the rule of the average human mind, and if the average human would cool between the first and second difficulty, then the jury are warranted in the presumption that the defendant has an average human mind, and that therefore his mind has cooled. If the jury do not think that time has been sufficient for his mind to cool, then he is entitled to manslaughter; and if he has, then he is not entitled to it.

In Heo v. Sullivan, 3 Selden 396, Horrigan & Thompson's Criminal Defenses, pages 69 and 70, we find this language: "The court was further requested to charge the jury that if they believed the prisoner in the heat of passion caused the death of the deceased it is not murder. This was properly refused. The designed killing of another without provocation, and not in sudden combat, is certainly none the less murder because the perpetrator of the crime is in a state of passion. The court was also requested to charge that if the jury believed that Smith, having had the fight with Sullivan, and by his conduct and blows aroused and excited the passions of the prisoner, and then returned, thereby keeping up the excited passions of the prisoner, and under such excitement the prisoner stabbed the deceased, it is not murder. This request was erroneous, and was properly rejected. Where after mutual combat, a question arises whether there has been time for excited passions to subside, the question always takes this form; whether there had been sufficient time to cool, and not whether, in point of fact, the defendant did remain in a state of anger. The request presented simply the question whether the defendant continued in anger up to the time of killing." Bishop in his new Criminal Law, section 711, subject 2: "If the passion had time to cool, the offense is not reduced to the lower degree, though in fact it had not cooled. For 'when anger, provoked by a cause sufficient to mitigate an instantaneous homicide, has been continued beyond the time which in view of all the circumstances of the case may be deemed reasonable, the evidence is found of that depraved spirit in which malice resides.' (Section 712.) We have no rule for determining how much time is necessary for cooling; in the nature of things, it must depend much on what is special to the particular case. Commonly the time in which an ordinary man under like circumstances would cool is deemed reasonable. 'If two men fall out in the morning, and meet and fight in the afternoon, and one of them is slain, that is murder; for there was time to allay the heat, and their after meeting is of malice.' An hour seems to have been thought sufficient. Three hours have been. Where a witness testified that the prisoner was 'absent no time,' though there was a pause in the fight, there it was adjudged not to have been a cooling." (Section 713.) "Ordinarily the sufficiency of the cooling time, and the sufficiency of the provocation, are respectively deemed questions of law, not of fact. But the time required to cool, for example, is sometimes, it is believed with great propriety, submitted to the jury."

We might multiply authorities on this question, but we deem it unnecessary to do so, taking it as thoroughly established that cooling time is a question of fact, where the issue is in the case, to be submitted to the jury as a question of fact on time and not upon the condition of the defendant's mind. It follows, therefore, that the court's charge complained of was not error.

Other matters complained of by appellant we do not deem necessary to review. There being no error in the record, the judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I dissent and will write my views.

HENDERSON, JUDGE.—I believe the charge on cooling time announces a correct proposition, and that the case should not be reversed on that account, and I agree to the conclusion reached.

### ON REHEARING.

### June 23, 1905.

HENDERSON, JUDGE.—Appellant insist on several grounds for rehearing, but in the view we take of it, it is only necessary to consider two. In our opinion the charge of the court was correct on the doctrine of cooling time, as heretofore announced.

While appellant reserved an exception to the action of the court giving the State's special requested instruction, yet in the argument in submitting the case he failed to call attention to the same; and while it was referred to it was not thoroughly discussed in the original opinion. In his motion for rehearing he has presented his assignment of error to this charge with much earnestness and force. The exceptions pointed out by him to the charge are special; and it does not occur to us that the first two exceptions taken point out any error in the action of the court. However, the third and last exception reads, as follows: "Said charge in effect negatives the defendant's right to resist an attack which imperiled his life or inspired him with the reasonable belief of suffering serious bodily injury at the hands of the deceased, if he provoked or renewed the difficulty, no matter what his purpose may have been in so doing. The court, after instructing the jury in general terms, if they believed that deceased seized property defendant believed was his and refused to give up the same, and they had a difficulty on that account, and that they afterwards separated; and that thereafter defendant followed deceased up the road, not for the purpose of renewing the difficulty, but with the honest intention to demand of deceased a return of the money, which he believed deceased had wrongfully taken from him, and that deceased refused to comply with his demand, and was about to make an unlawful attack upon him with a knife, and the defendant reasonably believed he was in danger of serious bodily injury or death

from said attack, and that on said account he fired and killed deceased he would be justified in so doing. The court then proceeded to instruct the jury, as follows: "On the other hand you are charged that, where the possession of personal property has once been lost, the owner has no lawful right to regain it by such means as result in homicide. So, in this case, if you believe that, prior to the shooting, deceased, without defendant's consent, seized money that was defendant's property, or that defendant fairly and reasonably believed was his property, and that deceased refused to give up such money, and that defendant and deceased had a difficulty on account thereof, and that, after they separated, you believe beyond a reasonable doubt that defendant armed himself and followed deceased up the road, and you further believe from the evidence beyond a reasonable doubt, that defendant so armed himself, and followed deceased with the intention of renewing or provoking a difficulty, with deceased; and that thereafter he shot and killed deceased, he would not be justified in so shooting and killing deceased, but if done upon express malice, as defined in the charge, he would be guilty of murder in the first degree; and if upon implied malice, as defined, would be guilty of murder in the second degree; and if done under the immediate influence of sudden passion aroused by an adequate cause, as defined in the charge, he would be guilty of manslaughter." Now, the vice here suggested is, that the charge merely requires the jury to believe that if appellant armed himself and followed deceased with the intention of renewing the difficulty, he would be guilty of some offense, no matter what occurred when he came up with deceased. That is, the charge does not require that after meeting with deceased he do some act to bring on the difficulty, but it merely states, if he followed him with the intention of renewing the difficulty, and thereafter he shot and killed deceased, he would be guilty of murder or manslaughter as the case might be. Clearly the charge in question contains this vice; and it is not necessary to cite authorities in order to show it. All the cases hold that mere pursuit of a party with intent to bring on a difficulty, does not deprive one of the right of self-defense; that after he comes up with the party he must then do some act with intent and calculated to provoke the difficulty. Here the court simply instructed the jury, if he pursued him, with the intention to renew the difficulty, and he afterwards killed him, no matter what occurred when they met, he would be guilty of murder or manslaughter as before stated. At first it occurred to the writer that the special objections urged to this charge did not raise the question or point out the particular vice in the charge. But as before stated, we believe the third ground relied on by appellant reaches the vice in the charge pointed out above.

We note in this connection that appellant requested a number of special instructions along the same line, which were given by the court, and which are correct in terms. However, they contravene the proposition announced in the charge above criticised, and taking the charges

together were calculated to leave the jury in a confused and uncertain state of mind as to what was the law.

We accordingly hold that because the court gave this charge the motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE (dissenting).—I do not agree with the opinion of the majority of the court reversing the case on motion for rehearing.

If the charge complained of by appellant puts a restriction upon appellant's right of self-defense, then special charges, numbers 2, 4, 5 and 6, given by the court at the request of appellant clearly cover any possible harm in the charge complained of and render harmless any inaccuracy therein.

Said charges are as follows:

"You are charged that it is not unlawful for a person to bet or wager money on his skill and ability to throw an anvil over his head; so that if in this case, you believe from the evidence that prior to the shooting that deceased and defendant mutually made a bet as to whether or not the defendant could pick up and throw an anvil over his head and that each placed the money so bet to wit: one dollar in the hands of one Calvin Stuckey as a stake-holder, and that thereafter defendant did pick up and throw said anvil over his head and did win said bet, then you are instructed that the defendant would in law be entitled to the possession of the money so won in the hands of said stake-holder. And if after winning said money deceased grabbed or snatched said money out of the hands of the stake-holder and refused to give same to defendant; and thereafter started away with said money, then you are charged that defendant would have the lawful right to seek deceased for the purpose of demanding the possession thereof. And you are further charged that in going in quest of deceased, he would have the lawful right to arm himself in anticipation of any attack the deceased might make upon him when they met; and if you further believe that defendant looked deceased up and after overtaking him, demanded his money, which deceased refused to surrender; whereupon an altercation ensued between them in which deceased cursed and abused defendant and drew a knife upon and started towards defendant in a threatening manner, and defendant believed from the acts, conduct and declaration of deceased he was in danger of being killed or of suffering serious bodily injury at the hands of deceased, then he would have the lawful right to shoot and kill deceased, and if you so believe you will acquit defendant, or if you have a reasonable doubt thereof you will find him not guilty. And in this connection you are charged that you must place yourself in the position of defendant, and view the facts and circumstances in evidence from his standpoint, and if from all the facts and circumstances in evidence, you believe that it

reasonably appeared to defendant at the time of the shooting he had a reasonable expectation or fear of death or suffering serious bodily injury at the hands of deceased, then defendant would have the lawful right to shoot and kill deceased in defending · himself from such real or apparent danger; and in this connection you are charged that said danger need not be in fact real; but need only be apparent, viewing the same from defendant's standpoint at the time; and if defendant began shooting at deceased under circumstances indicated above, you are instructed that he would have the right to continue to shoot so long as he believed himself in danger from such threatened attack of deceased, if any."

No. 4.   "The fact that the person arms himself before going to ask or demand possession of property that may belong to him, or that he believed belonged to him under the facts in evidence, does not deprive him of the right to defend himself from an unlawful attack made upon him.   So if you believe from the evidence that deceased had a dollar in his possession, which defendant had won from him, and defendant, for the purpose of demanding possession thereof, armed himself and sought deceased with the view of demanding possession thereof, and that upon meeting deceased after cursing or abusing defendant, advanced upon him with a drawn knife, and defendant believed he was about to suffer serious bodily injury at the hands of deceased, or be killed by deceased, fired upon deceased with a pistol, in order to protect himself from such assault if any, on the part of deceased, then if you so believe you will find him not guilty, or if you have a reasonable doubt thereof, you will acquit him; and in passing upon this issue you will view the facts and circumstances in evidence from the standpoint of defendant as it appeared to him at the time of the difficulty, and not as the same may appear to you now."

No. 5.   "You are charged that if you believe from the evidence that immediately before the killing, defendant had won a dollar from deceased, which deceased snatched and carried away and refused to give up to defendant when demanded, then you are charged that defendant would have the right to seek deceased for the purpose of demanding the money, and in doing so he would have the lawful right to arm himself, if he anticipated any unlawful attack upon himself; and if after overtaking deceased and demanding his money from him, deceased abused defendant and started towards him with a knife, then you are charged that defendant would have the right to use any force within his power to protect himself; and, if while deceased·was making or in the act of making an unlawful attack upon defendant with a knife, defendant shot and killed deceased, then he would be guilty of no offense, and if you so believe you will find him not guilty.   You are further charged in this connection that the fact that defendant armed himself before going to seek deceased would not impair or abridge his

right of self-defense if his purpose in seeking deceased was to demand his money."

No. 6. "If you believe from the evidence in this case, that shortly before the killing, the defendant had won a dollar from deceased, which had theretofore been placed in the hands of one Calvin Stuckey, under an agreement that if defendant would pick up and throw over his head a certain anvil the said dollar should belong to and be delivered to defendant, and that deceased immediately thereafter snatched said dollar from the hands of said Calvin Stuckey, whereupon a quarrel ensued between deceased and defendant, and in which the said deceased drew a knife upon defendant, and threatened to kill him and started away with said money, and defendant immediately thereafter went to where deceased was, and again demanded the possession of said dollar, and deceased again refused to give it to defendant, but began to curse and abuse defendant, and to make a demonstration as though to draw a knife upon him, and you believe that such facts, acts and circumstances, taken in connection with the previous wrongs done him by deceased, and the circumstances all taken together were of such a character as to arouse in the mind of defendant such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, and while in such condition he shot and killed deceased, you are charged that he could not be convicted of any offense higher than the grade of manslaughter."

Therefore, I believe the motion for rehearing should be overruled.